FERNANDO D. ALVAREZ AND MARIA ALVAREZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alvarez v. Commissioner
Docket No. 10416-81.
United States Tax Court
T.C. Memo 1982-521; 1982 Tax Ct. Memo LEXIS 231; 44 T.C.M. (CCH) 1093; T.C.M. (RIA) 82521; September 13, 1982. Lonnie G. McGee, for the petitioners. Kevin M. Bagley, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954 and Rule 180. [1] The Court agrees with and adopts the Special Trial Judge's Opinion which is set forth below. [2]
*232 OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1978 in the amount of $509.06. After concessions by petitioners of all other adjustments made by respondent and by the express consent of the parties pursuant to Rule 41(b), the issues for decision are: (1) whether under section 162 petitioners are entitled to deduct expenses incurred in traveling between petitioner-husband's residence and his place of work; and (2) whether the travel pay received by petitioner-husband is includable in his gross income under section 61. [3]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by reference. Petitioners *233 resided in Imperial Beach, California, when the petition in this case was filed. Petitioner Fernando D. Alvarez (petitioner) is a laborer and a member of the local Laborers Union, Local 89 (union), apparently headquartered in San Diego, California. Petitioner was employed as a laborer by Bechtel Power Corporation (Bechtel) for the period from June 3, 1975, through August 18, 1978, at the San Onofre Nuclear Generating Station (SONGS). Petitioner secured his employment through his union. Petitioner voluntarily terminated his employment in order to take another job. Bechtel had contracted with Southern California Edison to construct two nuclear reactor facilities (Units 2 and 3) at the SONGS site in February, 1974. Construction actually began in May, 1974. When the contract was executed, Unit 2 was originally scheduled to have been completed 64 months from the start of construction and Unit 3 was originally scheduled to have been completed 15 months after completion of Unit 2. During construction of Units 2 and 3, the estimated time of completion was updated once every six months based on actual construction experience. As of the time of trial, Bechtel's construction work *234 on Units 2 and 3 had not yet been completed. During the entire period of construction on Units 2 and 3, Bechtel had substantial labor needs requiring laborers among others. When Bechtel required laborers, an officer of Bechtel would contact a representative of the union and request that a certain number of workers be dispatched to the SONGS site. These employees were hired by Bechtel on an "as needed" basis. Such an employee could lose his job at the SONGS site by a layoff pursuant to a reduction-in-force, by being terminated for cause, or by a voluntary termination. The decision to lay off any given employee pursuant to a reduction-in-force was based on criteria established by Bechtel and was in the sole discretion of Bechtel. In making layoffs the job performance of any given employee was the most critical factor in determining whether that employee would be laid off. In short, the worst workers would be laid off first and the better workers would be laid off last. In determining which employees would be laid off and which would stay, no consideration was given to the employee's seniority on the job, seniority with the union, or union status (i.e., local member vs. member *235 working on a "travel card"). Representatives of Bechtel met periodically with representatives of the union to discuss construction progress and anticipated labor requirements. No one from the union told petitioner that Bechtel was hiring him on a temporary basis. No representative of Bechtel ever told petitioner, or any other trade employee, that he was being hired on a temporary basis. An official of petitioner's union acknowledged that the SONGS construction project was an unusual construction project in terms of duration and that he was unaware of any other project to which his union dispatched members which has lasted as long as the SONGS project. A trade employee, such as petitioner, could expect to be employed at the SONGS site by Bechtel as long as work was available and as long as the employee maintained a good job performance. Petitioner thought he was good at his job. Bechtel highly regarded petitioner's job performance as a laborer as indicated by the fact that he was employed for approximately 38 months. [4]
*236 Pursuant to the union agreement under which petitioner was employed at the SONGS site, petitioner was entitled to travel pay for every day he worked. This travel pay is sometimes referred to as subsistence pay. The official from petitioner's union testified that at the prerogative of the employee the subsistence payment was to cover the cost of transportation to and from work and of other items not in issue in this case. At present that rate is $16.00 per day. During 1978, petitioner resided 70 miles from the SONGS site. He received travel pay from Bechtel in the amount of $2,156.00 and this amount was reported as income on his 1978 Federal income tax return. Petitioner incurred $2,156.00 in expenses in traveling to and from the SONGS job site during 1978. He claimed an adjustment to income in that amount as employee business travel expense. Respondent disallowed the $2,156.00 claimed for travel expenses on the basis that it was not deductible because it was not incurred in a location where petitioner was working for an indefinite period. Respondent increased petitioner's interest expense deduction and made other automatic adjustments. OPINION The essential facts *237 herein do not differ from those in Portillo v. Commissioner,T.C. Memo. 1982-518, issued on the same day that this opinion was issued, although there are some differences in the details. As we noted in Portillo v. Commissioner,supra, counsel for the parties agreed to try four test cases at one session of this Court, separating cases into groups based upon the period of time that was worked. [5] Petitioner was employed at the SONGS site for over 38 months. We find that petitioner's employment at SONGS was indefinite during the taxable year. We are satisfied that for the reasons set forth in Portillo v. Commissioner,supra, petitioner is not entitled to deduct his daily travel expenses under section 162 and is required, as he did, to report his travel pay in his gross income under section 61. Accordingly, *238 Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable year, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tex Court Rules of Practice and Procedure, the post-trial procedures set forth in that rule are not applicable in this case.↩
3. By stipulation, the following parties have agreed to be bound by the resolution of the issues in this case when the decision becomes final: Sanchez v. Commissioner, D.N. 17836-80; Olson v. Commissioner, D.N. 20528-80; Sickels v. Commissioner, D.N. 4903-81; Parra v. Commissioner, D.N. 5069-81; Rivera v. Commissioner, D.N. 10412-81; Pairis v. Commissioner, D.N. 14057-81; and Bowie v. Commissioner, D.N. 16498-81.↩
4. The parties stipulated that petitioner was employed at SONGS from June 3, 1975, through August 18, 1978. Petitioner testified that he was laid off for three weeks in 1977 without explaining why. Since this testimony is inconsistent with the stipulation, we believe it is proper to disregard it. Rule 91(e). In any event, we do not believe a three week break in service in 1977 would change the result in 1978, especially when we consider an employment of about 38 months.↩
5. We believe this must have been at the insistence of petitioner's counsel since respondent makes no differentiation on this basis. When we consider that each of the different periods was sufficiently long in duration to support the same determination, we believe that the distinction made by petitioner's counsel is a differentiation without meaning. In fact, petitioner's counsel in his brief on behalf of the four test cases and one related case draws no such distinction. As we indicated in Portillo v. Commissioner,T.C. Memo. 1982-518↩, we believe one test case would have been sufficient.